Good morning, Your Honors, and may it please the Court. Under Lowry, the Printed Matter Doctrine applies to the novel arrangements of printed lines and other characters useful and intelligible only to the human mind. Our claimed web assets do not meet that definition. In King Pharmaceuticals, this Court expanded that definition. Can I ask, let me just say how I'm thinking about it and then you can tell me what's it. It seems to me you're biting off way more than you need to bite off here. Why isn't a simple proposition on which reversal of the board on printed matter would be required is that the printed matter exception requires a necessary but not sufficient condition that the element at issue claim the particular expressive content of some expression. This doesn't. And in particular, the origin of an expression is not the expressive content. It doesn't matter whether the reader is a computer or a human being. Origins of the expression are not part of the communicative content. And as far as I can tell, the Printed Matter Doctrine has never been applied except when what is being claimed is the particular communicative content. If it is, then there are some exceptions and there can be a relation, a functional relation. But, issues with that. I think I'm having trouble understanding your distinction. Your patent doesn't claim any particular printed matter. No. Well, isn't that the end of the... I think that's the question. Maybe I'm being too simplistic. When it doesn't claim particular printed matter but refers to the origins of different types of printed matter, that's not printed matter itself. I agree. And I agree that in the very first part of our appeal brief, we stated that Printed Matter Doctrine applies to printed lines of character that are intelligible only to the human mind. Claim that, do not, and therefore that's enough. That seems to me a broader proposition than the proposition you need because that proposition would exclude content readable by a computer. Well, that's a more difficult proposition to sustain than the narrower proposition that an element that does not claim the content of a communication is not an element to be ignored under the Printed Matter Doctrine. Regardless of who the receiver of the content is, it just doesn't apply to that. I believe certain content can be given patently. I mean, for example, if the content of a data structure is the amount of users using a particular server and you're doing load balancing. So you have one server is load balancing 10 other servers because you have 10 or 100,000 users using it and you have to balance them out there. That's informational content. And I believe that if claimed as a data structure, that informational content is the number of users attempting to access this server. Well, yeah, that should be given patently. Again, your point is kind of throwing me for a loop because it's not part of the case. Why are you pushing back? Oh, no, no. I'm not pushing. I'm just trying to understand. Well, at least in your brief, you're trying to argue for the big, broad rule that the Printed Matter Doctrine can't apply to computers. And I think what we're telling you is we're not going to buy that argument because you have a much simpler, more narrow argument that you should win on. Yeah. Well, and I believe that the printed matter can apply to computers if it's directed to the underlying content. And that's what was said by this court in Lowry in which they stated these claims are not directed to the underlying content. And for example, just to give by way of an example, a audio file is a data structure. It explains to the computer, this is what it is. This is how it should be operated on. Whereas if the data structure is, if the audio file is the star-spangled banner, the star-spangled banner part of it is the underlying content. And that shouldn't be given patentable weight. And so, but that, we're not making that, I mean, our claims aren't directed to that underlying content. Can I? Sure. Just move you on ahead, which is if indeed some of the contents here were to result in a reversal of the board here, what is your view as to how we proceed? This case has been going on for over 10 years, but would the reversal on the Printed Matter Doctrine question result in, in your view, result in a remand so that the board could revisit this question? The board could revisit it, and if the board chooses, yes, of course, the board could revisit the issue depending upon what this court states. And if the board does reverse and does send it back to the examiner, the examiner is not prevented from reopening prosecution. MPP 1214.04 specifically permits the examiner where there are situations where prior art that indicate unpatentability of the subject matter, they can request to reopen prosecution. So, you know, even if we do get a reversal here, there's no guarantee that we're going to get a patent. So you think that even if we reversed on Claim 24, we should go on to review the claim construction? That's not necessary. Not necessary? If, I mean, it's necessary if the... I'm going to agree that it's not necessary. We have a certain amount of discretion about whether it would be prudential to decide an agreement. Would it be a good idea for us to address that? I believe the brief stands for itself, but if you have any questions, I would be more than happy to answer those. I mean, your argument, at least as I understand it, rests pretty heavily, and maybe this is perfectly sufficient, I guess, on a combination of two things. One, that a search request, at least implicitly, entails identification of a criterion for the recipient of a request to use to compile the list. Yes. That's not the same as picking things already on a list. And second, that a number of picking things on a list descriptions in the specification are fully accounted for by the specification's acknowledgement that sometimes searches don't need to be performed, and those would be examples where searches are not being performed. The example in the specification that talks about where searches are not performed, they're actually, in rereading it, and I made this point in the required brief, is there actually isn't a criteria involved. The criteria is, you know, is it a time final or what have you. There is, even where there's, quote unquote, no search being involved, there is still a criteria. And so that language, again, written some 14, 15 years ago, isn't exactly accurate in determining what the search, you know, a search still requires a criteria. I mean, that's then the one point. There are no other questions? Why don't we hear from the government? May it please the court. We fully acknowledge that this claim does not entail printed words on a piece of paper. It's not traditional printed matter, as that term has been used in prior court decisions. I still think that the underlying policy of the printed matter doctrine applies in this case, in that, as this court explained in King Pharmaceuticals, we want to prevent the indefinite patenting of claims just by adding a novel but unfunctional addition to the claims. And here, clearly, I think it's pretty undisputed that the origins of the web assets provide no function to the rest of the method. Can I just ask you, I mean, there are two things on which you say repeatedly in your brief that I guess I didn't really track. One is the heading, the origins of the web assets are non-functional descriptive material. That sounds like nonsense to me. I mean, the origins are not descriptive material at all. Non-functional or otherwise. It's just not a description. Like the provenance of a wine is not descriptive. It's where it came from. Yeah, but that's something that's describing it. That's a property that's telling you something about it. The origin is not put into the material that is claimed. If the material said, I come from the user as opposed to I come from third party, then the origin would be part of the descriptive content. Well, I think that's the point. The origin has no use here. There's no application of the origin. So one point is it seems to me the origin just isn't descriptive material at all. The second thing that you said, say, a number of times is the method step, it doesn't change the, the origins don't change the method at all. Again, I don't understand how that can be. One method involves selecting things from A or B. Another method involves selecting things from A. How are those things not different? Well, I think the point is that the rest of those, it doesn't matter where you pick your web asset from, the method of... It matters under the claims. Why doesn't it matter? If, say, I'm obviously not a web designer or anything like that, but 10 or 15 years ago, say these basic web design packages came out and it limited you to only the materials provided with the web design software. And you couldn't go outside that. You couldn't put in your own pictures, your own videos or anything like that. You were limited to the software package. And this company comes along and says, we found a new method that doesn't confine you to just the materials here. You can also go and use your personal resources. Why isn't that a functional difference? Well, if that was the case that really choosing from... In the prior art, you could only choose from A and then your claim now you say you can choose from A or B. And that's a leap from the prior art that has some function. I agree that that may be a case where that limitation would be given weight. But isn't that the limitation we're talking about? That you found irrelevant. It may be that you should have found it obvious. Well, I think... But to disregard it on a printed matter doctrine when it's not printed matter at all is problematic. I think the issue that the board came across here was that the claim sets up to have this distinction between where you get your web asset from, but then in the rest of the claim it makes no use of that. So, for example, in the... Lots of claim elements don't use other elements of the claim. The fact is you say the origin of the selected web asset does not in any way change, alter, or affect the method. I just don't know... Well, I agree that... I can't get how that could be true when the claim says select from A or B. I agree that there's... It does affect it. I agree there's a difference between selecting from a third-party web asset versus selecting from a user-submitted web asset. That's different. I agree. So if that's... I mean, if you think that's a different method, then... Well, you just said you think that's a different method too, right? I mean, you could just... Well, I mean, the point is that the rest of the method steps are performed exactly the same no matter where you get your web asset from. It doesn't matter if you get your web asset from a third-party, from yourself, from the internet, from... It doesn't... The origin of it has no bearing on how the method is performed. Except that for certain parts of the steps using different origins, you go to a different place. I mean, the fact that everything else in the program works the same way doesn't mean that this particular method step has no function. I mean, if nobody had ever thought of it before, the fact that the only difference between this and the prior art is that you can go outside of what was provided and use your own resources, the fact that everything else is the same doesn't mean it's not a patentable step, does it? What they were getting at in the specification here, and if you read the specification, they have a system set up so that when a third-party web asset author, when you select their web asset, it's supposed to provide payment to them. So, you know, if you create these images or these files or whatever, you put it in the database, then if someone selects your image or your music file, you get some credit, some money for that. It's in this application or the prior art? This application. It's in this application. So, I agree that there is some... I mean, that didn't... The distinction between the two didn't come randomly. I mean, there... I think that's the basis. I mean, I understand what you're saying. You're understanding that this distinction isn't the point of the invention. There's no discussion that it's necessarily, you know, a patentable step or anything like that, but that doesn't make it printed in matter. It just makes it obvious. I think that's the case. I would think if this case came back, there would be an easy obviousness rejection or even an anticipation rejection by saying that, you know, it was within the knowledge in the art that you could choose from different places. I mean, was there evidence of that? You know, this is... This dates, what, to 1995, is that right? That's a long time. Yeah. What we all have in our heads right now is not what we had in our heads in 1995. The problem is that we don't... We don't have any evidence on that because this printed in matter rejection first arose at the board. So, at the board level. So, we don't have... The examiner, I think, incorrectly thought that this reference met the claim limitation even giving weight to all the words. So, that's why the board reversed that rejection and then put a new rejection in themselves. So, if it came back, I think that, you know, we could open up... Reopen prosecution, as Paulin said, and examine whether this claim is, you know, anticipated or obvious, giving weight to all the claim limitations. Can I ask you about the search request issue? I guess I was struck almost at the threshold with the following problem, I guess, with the board's claim construction. A definition is supposed to take a form such that you can replace the thing being defined with the definition, plop it in, and it makes grammatical sense. Okay. That seems to me not to have gone on here. A search request is something that is being, under the claim, received. It is not the act of doing something. It is an information packet to be acted on by the receiver of that information packet. That's not a selective retrieving of data. And while that may seem like a small matter, it seems to me to get at the problem with the board's claim construction, which is that this information packet is supposed to tell the receiver of that packet, go and find something. That seems to me to entail a criterion, one or more criteria, for how the receiver of this information packet is supposed to go and find something. And that's what it seems to me the board eliminated with its claim construction. I think that the board was just looking at the broad use of the term search request and the specification and giving the term its broadness reasonable construction because as we talked about in the brief and as we talked about with appellant, there are examples in the specification where you're just choosing from a list. But don't all of those examples, I guess I don't want to be contentious about the question, but is it true or not true that all of those examples can be understood as coming under that portion of the specification language that says sometimes you don't need to have a search, like when you just say, oh, I already see the list of choices. I want that one and that one. That's not a search. I don't believe so because I think if what we cited in our brief in the specification, there's a, I mean, the example in the specification where this comes up is choosing a color. So they just provide you a list from what's called the color palette and you just choose one color. And that is specifically referred to as a search request in the specification. Where is that? If you look, so it's at, in our brief, it's on pages 25 and 26 and then in the appendix. Yeah. Oh, in the appendix, it's A668 line 26 to A669 line 6. So it says. 668? Yes. So the information that is obtained is responsive to the search request entered at step 1604. That is the information concerns color. 669, at the top of 669. Got it? Yeah. So it says the search request was made via color palette 640. So the color palette is just the example where you can just, you don't enter anything in. You don't enter a keyword search. You just select a color you want. And that's specifically referred to as a search request. So, you know, I think that the board was just going on the breadth of the specification which gives an example of a search request where you're not entering a keyword. You're not performing the traditional kind of Google searches as you would think of it. Nothing further. I would hope that this court wouldn't look so narrowly at the printed matter doctrine and see that this case, while not traditionally fitting into printed matter, really the same underlying policy applies. Can I just check my understanding? Sure. The printed matter doctrine is not actually statutory, so you're making an argument that a doctrine that is non-statutory that has been said over many decades to be one without a very decent statutory foundation should be broadened according to some broad policy one can find in this non-statutory doctrine. I don't think we're necessarily broadening it beyond what is said in the King Pharmaceuticals case. That was actually a claim element that says, communicate the following information to somebody. Correct, but I don't think it was the fact that it was communicating information that rendered it. Is there any printed matter case that doesn't, at a minimum, just a necessary condition, not a sufficient condition, at a minimum require and involve a printed matter case in which the doctrine was applied to support disregarding a claimed element that didn't involve an element that claimed the content of an expression? I'm not aware of one. Yeah, I'm not either. The origin is still providing you some information. It's providing information to the user and not— I just think that we'd be allowing the indefinite claiming of something that has no function here that's merely descriptive. If you think it's indefinite, why don't you reject it? Not indefinite in the patent indefinite sense, the sense that you can just keep adding these kind of trivial limitations that don't— That don't distinguish them over prior art, so therefore they're obvious. I mean, you're really asking us to let you be lazy. I don't mean to be mean about it, but this is the third printed matter case I've seen from you all, and I've only been here two years. And they've all involved instances like this, where the court is trying to fix a sloppy examiner's rejection. I think that in this case, an obviousness rejection can clearly be made, but I think that there could be a case where you add a limitation that's not functionally related to the method, and it wouldn't be obvious, because if you're picking something— if you're adding something that has no functional relation to the method, you can understand that it may not be so obvious. So I think that—I think, sure, obviousness could be substituted here, but it may not be the case every time. Okay, thank you. Thank you. Let me just address a few of the points made. The invention actually goes—claims prior to 2000, June 2000, not 1995, but still 15 years ago. Opposing counsel talks about the origins of the web assets, those that we talked about, like mentioned in the reply brief, when we specifically asked the board, what do you believe to be the print of matter, they did not state the origins of the web assets was the print of matter. And so had the board done that, we would have changed our appeal brief accordingly to address that particular point. Now, to go to your point, Judge Hughes, about being a web designer, I'm no web designer, but where you get the web assets, in this case, where if it's provided to the user, the functionality would have to be—those web assets would have to be stored locally in the computer, either in memory or in a hard drive or in a diskette, and the user interface would have to access those web assets in a different manner, in a functionally different manner than it would be able to access the web assets that were associated in the database that's in the website design server. And so there is a functional difference associated with those limitations. And you could argue about that if there were an obviousness rejection about whether this— Absolutely. And, you know, what I always say about obviousness rejections is until I see the prior art and until I understand, you know, what was art at the time of the invention, it's tough for me to decide whether something's obvious or not. And based upon the prior art that they provided and the 102 rejection in which these claims are rejected, you know, there was no obvious rejection, you know, currently before us. Not to say they can't do it later, but, you know, certainly not before us. Can I ask you a very specific question about the search requests? Sure. Yes. Page 669 of the appendix. Okay. Please. Yeah, so this is page 669, page 39 of your application. And up at the top, it speaks of, I guess Mr. Foreman indicated, the line about information obtained, various places concerned, sound elements if the search request was made via sound menu 540 and concerns color elements if the search request was made via color palette 640. Does not that language use the phrase search requests to a simple pick from a menu that you are looking at? A menu that has already had a criteria applied to it, which is a color palette. So you've had, it's a search request in the context of either color palette, sound palette, or what have you. It's not a search request that you have, let's say, an entire list of objects that haven't already been, and a criteria has already been applied to it. Again, it's a color palette. You have a criteria already applied to it. And so, and again, that still falls within our definition of search request. It has to involve a criteria. If there are no other questions. Thank you.